UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 04-25665 |
| | ) | |
| MIGUEL A. LEBRON and | ) | |
| MARIA M. LEBRON, | ) | Chapter 7 |
|     Debtors. | ) | |
| | ) | |
| TRINITY HIGH SCHOOL, | ) | Adversary Proceeding No. 05-1211 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Arthur I. Harris |
| | ) | |
| MIGUEL A. LEBRON and | ) | |
| MARIA M. LEBRON, | ) | |
|     Defendants. | ) | |

MEMORANDUM OF OPINION

Before the Court are the parties' cross-motions for summary judgment (Dockets #11 & #13). At issue is whether credit extended to the defendant-debtors by the plaintiff for the 2003-04 school year is nondischargeable under section 523(a)(8) of the Bankruptcy Code. For the reasons that follow, the Court finds that the plaintiff's claim against the defendant-debtors is nondischargeable. Accordingly, the plaintiff's motion for summary judgment is granted, and the defendants' motion is denied.

FACTS

The following facts are not in dispute. Defendant-debtors, Miguel and Maria Lebron, desired to enroll their daughter in Trinity High School, a private

school, for the 2002-03 school year. Unable to pay the tuition in full, the Lebrons contacted Trinity in the spring of 2002 to ask about their financing options. Trinity's Business Manager, Daniel Thomeier, informed the Lebrons that Trinity required each student's tuition be paid in full prior to enrolling in the fall. Although Trinity has a financing program through National City Bank, the Lebrons did not wish to pursue this option and inquired if there was another way to arrange for payments. Mr. Thomeier then informed the Lebrons that they could obtain a loan from Trinity for any amount not paid by July 1. The Lebrons chose this option for both the 2002-03 and 2003-04 school years. Aff. of Daniel Thomeier.

In March 2002, Mrs. Lebron completed and signed a tuition worksheet (Pl. Ex. C), which specified $5,845 was due in full to Trinity by July 1, 2002. Mrs. Lebron and Mr. Thomeier agreed that the Lebrons would pay $1,500 on June 1 and would make monthly payments of $425 starting in July. Pl. Ex. B. While there is nothing in the record regarding the payment terms for the 2003-04 school year, Mrs. Lebron did complete and sign another tuition worksheet in March 2003 (Pl. Ex. D), which specified $6,350 due in full to Trinity by July 1, 2003. Trinity's records show that the Lebrons paid the 2002-03 tuition balance in full but continue to owe $2,775 for the 2003-04 school year. Pl. Ex. E.

2

The Lebrons filed their Chapter 7 petition on December 10, 2004. They received a discharge on May 9, 2005. Trinity commenced this adversary proceeding under section 523 and Bankruptcy Rule 4007 to determine the dischargeability of Trinity's $2,775 claim.

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment,

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417,

423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

## DISCUSSION

The parties dispute whether the tuition payment arrangement between Trinity and the Lebrons constitutes a loan within the meaning of section 523(a)(8) of the Bankruptcy Code. Section 523(a) provides in pertinant part:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt —
> . . . .
> (8) for an educational . . . loan . . . made under any program funded in whole or in part by a . . . nonprofit institution . . . .

The Lebrons do not assert that excepting this debt from discharge under section 523(a)(8) will impose an undue hardship on themselves and their dependents.

The Bankruptcy Code does not define the term "loan" so courts must infer that Congress meant to incorporate its establish meaning. *See In re Merchant*, 958 F.2d 738, 740 (6th Cir. 1992) (citing *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 329 (1981)). The Sixth Circuit has held that the term "loan" in section 523(a)(8) includes extensions of credit when the following factors are present:

4

(1) the debtor is aware of the credit extension and acknowledges the money owed; (2) the amount owed was liquidated; and (3) the extended credit was defined as "a sum of money due to a person." *In re Merchant*, 958 F.2d at 741.

Several Circuits have questioned whether the *Merchant* test requires an agreement between the debtor and creditor. To the extent the *Merchant* test does not require an agreement, these courts have declined to follow *Merchant*. *See In re Chambers*, 348 F.3d 650, 656 n.3 (7th Cir. 2003); *In re Mehta*, 310 F.3d 308, 314 (3rd Cir. 2002); *In re Renshaw*, 222 F.3d 82, 91-92 (2nd Cir. 2000). In each of these cases, the court emphasized that an agreement between the debtor-student and creditor-school must be reached prior to or contemporaneous with the extension of credit by the school. *See, e.g., In re Chambers*, 348 F.3d at 657 ("[The] existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan from a mere unpaid debt.); *In re Renshaw*, 222 F.3d at 88 ("Absent [a prior or contemporaneous] agreement, failure to pay a bill when due does not create a loan."). *Renshaw* and *Mehta* also noted, however, that there was evidence of such an agreement in *Merchant*. *In re Renshaw*, 222 F.3d at 91 (noting that the Sixth Circuit may have based its decision on the existence of "prior or contemporaneous agreements"); *In re Mehta*, 310 F.3d at 314.

5

This Court, bound by the Sixth Circuit's decision regardless, believes that the holding in *Merchant* is consistent with *Chambers*, *Mehta*, and *Renshaw*. The *Merchant* court noted that many circuits had adopted the "classic definition of a loan," which defines a loan as a type of contract, *i.e.*, an agreement. 958 F.2d at 741 (citing, *inter alia*, *In re Grand Union Co.*, 219 F. 353 (2nd Cir. 1914)). While the court did not expressly adopt the *Grand Union* definition, it neither rejected nor criticized this definition, nor did it reject the requirement of an agreement. *Id.* Rather, the court adopted the analysis employed by *In re Hill*, a case in which the debtor "was aware of all the terms of [his] loan." 44 B.R. 645, 647 (Bankr. D. Mass. 1984). Moreover, the court in *Merchant* applied its test in terms of a prior agreement. The student-debtor had "signed forms evidencing the amount of her indebtedness before she registered for classes." 958 F.2d at 741. Since the student received her education "by *agreeing* to pay these sums of money after graduation," the court found a nondischargeable loan. *Id.* (emphasis added); *see also Feyes*, 228 B.R. 887, 890-91 (Bankr. N.D. Ohio 1998) (noting that signing a "Payment Plan Worksheet" prior to enrollment, which specified tuition and other charges to be paid after enrollment, might well satisfy the *Merchant* test). Thus, this Court reads the first part of the *Merchant* test, that the debtor be aware of the extension and acknowledge the amount owed, to require an agreement prior to or

6

contemporaneous with the debtor's receipt of the credit extended.

Applying *Merchant* to Trinity's motion for summary judgment and viewing the evidence in a light most favorable to the Lebrons, the Court finds that the three factors are present and that Trinity's claim is a loan under section 523(a)(8). The amount is liquidated and defined as "a sum of money due to a person" in the tuition worksheet. The tuition worksheet (Exhibit D), signed by Mrs. Lebron, indicates an amount of $6,350.00 "due to Trinity." Thus, the second and third factors of the *Merchant* test are present.

The first factor of the *Merchant* test is also present. Trinity's Business Manager, Mr. Thomeier, explained to Mrs. Lebron that Trinity does not permit enrollment unless tuition is paid in full during the preceding summer. In his affidavit, Mr. Thomeier states that the Lebrons agreed to a loan from Trinity for both the 2002-03 and 2003-04 school years. Ms. Lebron's note to Mr. Thomeier confirms an agreement for the 2002-03 school year. Finally, the tuition worksheet specifies an amount "due to Trinity" by July 1 of the upcoming school year. The Lebrons have offered no evidence to refute Mr. Thomeier's assertions, nor do they dispute the existence of an agreement for the 2003-04 school year. Thus, the arrangement between Trinity and the Lebrons can only be characterized as an agreement to an extension of credit, the amount of which Mrs. Lebron

acknowledged when she signed the tuition worksheet. Since all three factors of the *Merchant* test are present, the tuition payment arrangement is a "loan" under section 523(a)(8). Thus, Trinity's motion for summary judgment must be granted.

The Lebrons contend that Trinity must turn over their daughter's transcripts to them. (Dockets #4 & #15). This issue is not properly before the Court since this relief must be requested in a counterclaim. *See* Fed. R. Bankr. P. 7001, 7007, 7013. While withholding a transcript because of a prepetition debt is a violation of the automatic stay, that stay is lifted when the debt is determined to be nondischargeable. *Merchant*, 958 F.2d at 742; *see* 11 U.S.C. § 362(c)(2)(C). Thus, a determination that the debt is nondischargeable would render a request for the transcripts moot.

## CONCLUSION

For the foregoing reasons, Trinity's motion for summary judgment is granted, and the Lebrons' motion for summary judgment is denied. Trinity's claim against the Lebrons is nondischargeable under section 523(a)(8) of the Bankruptcy Code.

IT IS SO ORDERED

Arthur I. Harris
United States Bankruptcy Judge

8

05-01211-aih    Doc 19    FILED 10/04/05    ENTERED 10/05/05 11:24:49    Page 8 of 8